# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

TAMARA JOHNSON,

                       CV 11-123-M-DWM-JCL

              Plaintiff,

      vs.

                       FINDINGS & RECOMMENDATION
MICHAEL J. ASTRUE,            OF UNITED STATES
Commissioner of Social Security,    MAGISTRATE JUDGE

             Defendant.

_____

    Plaintiff Tamara Johnson brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, and for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c).

    Johnson protectively filed her applications for benefits in January 2009, alleging disability since June 28, 2006 due to chronic pain in her feet and neck pain. Tr. 134-50, 186. Johnson's application was denied initially and on

reconsideration. Tr. 91-94. After an administrative hearing at which Johnson

appeared with counsel, an Administrative Law Judge found that Johnson was not

disabled within the meaning of the Act. Tr. 12-23. The Appeals Council denied

Johnson's subsequent request for review, thereby making the ALJ's decision the

agency's final decision for purposes of judicial review. Tr. 1-5. Jurisdiction vests

with this Court pursuant to 42 U.S.C. § 405(g).

Johnson was 45 years old at the time of her alleged onset date in June 2006,

and 49 years old at the time of the ALJ's decision.

## I.   <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the Commissioner's

decision only where the decision is not supported by substantial evidence or where

the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings

"if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.    BURDEN OF PROOF

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the

claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

III. **DISCUSSION**

Following the steps in the sequential evaluation process, the ALJ first found that Johnson met the insured status requirement of the Act through March 31, 2012, and had not engaged in substantial gainful activity since the June 28, 2006, alleged onset date. Tr. 14. For purposes of his discussion, the ALJ identified two relevant time periods, the first of which began on Johnson's June 28, 2006, alleged

onset date and ended on April 22, 2008, when Johnson had surgery on her right foot.   The ALJ found that during this initial period, Johnson suffered from "right third webspace Morton's neuroma," which constituted a severe impairment.  Tr. 14.  The ALJ further found that beginning on April 23, 2008, and continuing through the date of his decision, Johnson had the following severe impairments: "right third webspace neuroma status post Morton's neuroma excision, early complex regional pain syndrome in the bilateral lower extremities and status post DuVries procedure on the left foot."  Tr. 14.  At step three, the ALJ determined that Johnson did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments.  Tr. 15.  The ALJ also found that while Johnson's  "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms" were not entirely credible.  Tr. 16.

Having done so, the ALJ next determined that between June 28, 2006 and April 22, 2008, Johnson was capable of performing a limited range of medium work and could return to her past relevant work as a sales representative/ advertising and trade show salesperson.  Tr. 15.  As for the period after April 22, 2008, the ALJ concluded that Johnson could still perform medium work, but with

additional limitations. Tr. 15. Even with those additional limitations, the ALJ

found based on the vocational expert's testimony that Johnson could perform

sedentary work as a receptionist and light level work as an office clerk. Tr. 22.

## A. Credibility

Johnson first argues the ALJ did not provide sufficiently clear and

convincing reasons for finding her subjective testimony less than entirely

believable.

In considering a claimant's credibility with regard to subjective symptom

testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2)

an analysis of the claimant's credibility as to the severity of the symptoms.

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing *Cotton v. Bowen*,

799 F.2d 1403 (9th Cir. 1986)). The *Cotton* test requires only that the claimant (1)

produce objective medical evidence of an impairment; and (2) show that the

impairment(s) could reasonably be expected to produce some degree of symptom.

*Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th

Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then

the ALJ can reject subjective testimony as to the severity of a claimant's

symptoms only by citing specific, clear and convincing reasons for doing so.

*Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  *Smolen*, 80 F.3d at 1284.  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In assessing credibility the ALJ must also consider the factors set forth in SSR 96-7p including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *See also* 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Johnson suffers from several severe impairments that can reasonably be expected to produce some degree of symptom. Johnson has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ began his credibility analysis by focusing on the first relevant time period, which began on Johnson's June 28, 2006, alleged onset date and ended on April 22, 2008, when Johnson had surgery on her right foot for her right third webspace Morton's neuroma. Tr. 17. As the ALJ noted, Johnson's doctors reported in August 2006 and October 2007 that she had no work related restrictions. Tr. 18, 20. The ALJ also found, with support in the record, that the injections and other treatment Johnson received during this initial period were largely successful in controlling her symptoms. Tr. 17, 235, 277-81. In fact, Johnson testified that between 2007 and her surgery in April 2008, she was able to work about 16 hours a week cleaning houses and doing yard work. Tr. 39. Johnson also testified that before her surgery she could walk approximately one mile at a time, sit for a couple of hours at a time, carry 50 pounds for short distances, stoop, squat, kneel, crouch, and climb stairs. Tr. 18, 65-67. The ALJ

found Johnson's testimony as it pertained to this time period "generally credible" and reduced her residual functional capacity accordingly to allow for a limited range of medium work with the ability to alternative walking, standing, and sitting. Tr. 18.

The ALJ did not find Johnson's testimony as to the extent of her pain and limitations following her surgery in April 2008 to be as believable. Johnson testified that she now spent most of her days sitting down with her legs up, preparing simple meals, watching TV and sleeping. Tr. 42-43. Johnson stated that she was constantly in pain except when sleeping, and had approximately three bad days each week, which she spent "not doing anything," not even preparing her own dinner. Tr. 44. The ALJ acknowledged Johnson's testimony, but found her only partially credible for a number of reasons.

The ALJ first determined that Johnson's allegations of total disability during this period were not supported by the medical evidence, and inconsistent with the fact that she responded well to treatment and reported improvement to her doctors. Tr. 18. As the ALJ noted, for example, Johnson's surgery was largely successful, as evidenced by the fact that two and half months after her surgery she reported to treating physician Dr. Gregory Behm that she was "doing more and more all the time" and while her foot felt odd, she was in "no real pain." Tr. 18,

271.  The ALJ also made note of the fact that shortly after Dr. Patrick Danahar began treating Johnson for bilateral foot pain in May 2010, he administered lumbar sympathetic blocks that left Johnson feeling greatly improved.  Tr. 19, 357-59.  Johnson also reported improvement with daily swimming, and Dr. Danahar instructed her "to go about her activities of daily living including her swimming and exercises as recommended."  Tr. 361-62.  The ALJ permissibly found the fact that Johnson reported no real pain a few months after her initial surgery and thereafter responded well to treatment undermined her credibility as to the disabling and ongoing severity of her pain.

The ALJ also discounted Johnson's testimony in part based on evidence of her activities during this time period.  Tr. 19-20.  In particular, the ALJ focused on the fact that Johnson had spent several weeks visiting her family in Hawaii in early 2010.  Tr. 20, Johnson reported to Dr. Danahar upon her return that her pain had "nearly resolved" while on vacation, and she had frequently walked barefoot in the sand.  Tr. 20,  366.  Johnson argues the ALJ impermissibly penalized her for attempting to lead a normal life, and maintains the fact that she was able to travel to Hawaii says nothing about her ability to engage in work related activities on a sustained basis.

It is true that claimants need not be completely incapacitated to be found

disabled and "should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). But that is not what the ALJ did here. Rather, the ALJ appropriately found the fact that Johnson had spent several weeks in Hawaii, during which time she was nearly pain free and took walks on the beach, cast doubt on her testimony at the hearing, which was that she had unremitting pain of such severity that she was essentially unable to function three days a week and otherwise spent most of her days resting and incapable of doing anything more than the simplest of household tasks. This was a legitimate basis for questioning Johnson's credibility. The Court is thus satisfied that the ALJ provided sufficiently clear and convincing reasons for finding Johnson's testimony less than entirely credible

### C.    Medical Opinions

Johnson argues the ALJ did not cite sufficiently specific and legitimate reasons for rejecting the opinion of Dr. Patrick Danaher.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The

weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information used by the treating physician. *Andrews*, 53 F.3d at 1041. The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Danaher first saw Johnson in May 2010 for what he diagnosed as an "early complex regional pain syndrome, type II, of the bilateral lower extremities." Tr. 364. Dr. Danaher saw Johnson twice the next month for the purpose of administering lumbar sympathetic blocks that left Johnson feeling greatly improved. Tr. 19, 357-59. On June 29, 2010, Dr. Danaher completed a medical

source statement form for the purpose of assessing Johnson's ability to do certain work-related activities. Tr. 350-55. Dr. Danahar indicated that Johnson could frequently lift and carry up to 10 pounds and occasionally lift and carry up to 20 pounds, sit for eight hours at a time, stand for 20 minutes at a time for a total of four hours, walk for 10 minutes at a time for a total of five hours, could not travel or do activities like shopping without a companion, and could not walk a block at a reasonable pace on a rough or uneven surface. Tr. 350-55. Dr. Danaher wrote in closing that Johnson was "very limited in use of bilateral lower extremities" but "would be able to do some part time sedentary work." Tr. 355.

The ALJ acknowledged Dr. Danaher's opinion, but did not agree with his assessment of Johnson's physical limitations. In considering Dr. Danaher's opinion, the ALJ wrote the following: "Although the undersigned does not concur with Dr. Danaher's residual functional capacity assessment, his conclusion in that the claimant is not completely disabled is consistent with this decision. Thus, the undersigned grants his opinion some weight." Tr. 20.

While the ALJ explicitly rejected Dr. Danaher's assessment of Johnson's residual functional capacity, he did not provide any reasons for doing so. This was error. See e.g. *Reddick*, 157 F.3d at 725 ("[T]he ALJ may not reject a [treating physician's] opinion without providing specific and legitimate reasons

supported by substantial evidence" for doing so.)  According to the Commissioner, "[t]he ALJ reasonably discounted Dr. Danaher's opinion regarding extreme limitations in functioning because it was not supported by his treatment notes or by the record as whole."  Dkt. 21, at 9.  But the ALJ did no such thing.  He simply stated that he did not agree with Dr. Danaher's residual functional capacity assessment without providing any explanation.

The ALJ instead focused on the fact that Dr. Danaher had concluded Johnson was not entirely disabled because she was capable of part time sedentary work, and found that Dr. Danaher's opinion was thus "consistent with this decision."  Tr. 20.  But Dr. Danaher's opinion is not consistent with the ALJ's decision.  In Dr. Danaher's opinion, Johnson was limited to part time sedentary work.  The ALJ adopted a far less restrictive set of limitations, however, and found Johnson capable of a range of medium level work.

The Commissioner nonetheless maintains that Dr. Danaher's opinion is consistent with the ALJ's decision because one of the jobs the ALJ identified at step five as falling within Johnson's residual functional capacity after April 2008 was a sedentary one.  Based on the vocational expert's testimony, the ALJ found that Johnson could work as a receptionist, which is classified in the Dictionary of Occupational Titles as a sedentary, semi-skilled position.  Tr. 84; DICOT 237.367-

038, 1991 WL 672192 (G.P.O.). Because Dr. Danaher indicated that Johnson would be capable of some sedentary work, the Commissioner argues that Dr. Danaher's opinion actually supports the ALJ's conclusion that Johnson could work as a receptionist.

What this argument overlooks, however, is the fact that Dr. Danaher believed that Johnson would only be capable of part-time sedentary work. A residual functional capacity assessment like that made by the ALJ "is an assessment of an individual's ability to do work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184 (S.S.A.). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184 (S.S.A.). This means that "a claimant is disabled if he is unable to work an eight hour day." *Harrison v. Astrue*, 2012 WL 527419 *4 (D. Or. Feb. 16, 2012) (citing *Ratto v. Secretary, Dep't of Health & Human Servs.,* 839 F.Supp. 1415, 1430-31 (D. Or. 1993) and *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)).

Accordingly, Dr. Danaher's opinion that Johnson was limited to part time sedentary work after June 2008 is inconsistent with the ALJ's determination that Johnson was not disabled because she could work on a regular and continuing basis as a receptionist. While the Commissioner identifies various grounds for

rejecting Dr. Danaher's opinion, the Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). Under *Orn*, it would be error for this Court to affirm the ALJ's decision on grounds proposed by the Commissioner.

### C.    Listed Impairments

Johnson also argues the ALJ erred at step three by finding that she did not medically equal the criteria of any listed impairment.   At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1.  "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404. 1526(a).  The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before

concluding that a claimant's impairments do not meet or equal a listed

impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the

burden remains with the claimant, who must present medical evidence that his

impairments meet or medically equal all of the criteria of a listed impairment. *See*

*Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Johnson argues in her opening brief that the ALJ erred by finding that her

"impairments were not medically equal to a listing for 'Musculoskeletal System'."

Dkt. 14, at 12. As the Commissioner notes in response, however, there are several

individual listings within the section relating to impairments of musculoskeletal

system, each with different criteria. In her reply brief, Johnson argues for the first

time that her complex regional pain syndrome is medically equivalent to Listing

1.02 for major dysfunction of a joint.

Listing 1.02 requires evidence of a gross anatomical deformity

and chronic joint pain and stiffness with signs of limitation of motion or
other abnormal motion of the affected joint(s), and findings on appropriate
medically acceptable imaging of joint space narrowing, bony destruction, or
ankylosis of the affected joint(s).
With
A. Involvement of on major peripheral weight-bearing joint...resulting in
inability to ambulate effectively, as defined in 1.00B2b; ....

20 C.F.R. 404, Subpart P, Appendix 1, Listing 1.02.

Johnson concedes that she "does not in fact have a major dysfunction of a

joint," but nevertheless maintains that her complex regional pain syndrome medically equals Listing 1.02 because she has "a major dysfunction of both of her feet," which has resulted in an inability to ambulate effectively.   Dkt. 23, at 5-6. Johnson argues that Dr. Danaher's opinion shows that she cannot ambulate effectively because he indicated she would be unable to walk a block at a reasonable pace on rough or uneven surfaces.  Tr. 355.

There is no indication that Johnson, who was represented by counsel at the time,  ever raised this specific argument in front of the ALJ.  Nonetheless, because this matter should be remanded for the ALJ to reevaluate Dr. Danaher's opinion, it will be up to the ALJ to determine whether or not to consider Johnson's equivalency argument under Listing 1.02.

### D.      Remand for Further Proceedings or Award of Benefits

The decision whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion.  *Harman v.* Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).   Remand for an award of benefits is appropriate if there is no useful purpose to be served by furthers proceedings or if the record is fully developed.  *Strauss v. Commissioner*, 635 F.3d 1135, 1138-39 (9th Cir. 2011).   The Court should remand for an award of benefits if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there

are no outstanding issues that must be resolved before a determination of disability can be made, and; (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman,* 211 F.3d at 1178.

Here, further proceedings would be useful because it is not clear whether the ALJ would be required to find Johnson disabled if he had properly considered Dr. Danaher's opinion. Crediting Dr. Danaher's opinion would create a conflict in the medical evidence, some of which indicates that Johnson was capable of more than just part time sedentary work. That conflict would then have to be addressed by the ALJ. The ALJ is in a better position than this Court to evaluate the medical evidence, and giving the ALJ the opportunity to evaluate Dr. Danaher's opinion on remand will remedy what this Court has identified as a defect in the original administrative proceedings.

As the Ninth Circuit explained when reaching a similar assessment in *McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir. 1989), "[t]here may be evidence in the record to which the [Commissioner] can point to provide the requisite specific and legitimate [or clear and convincing] reasons for disregarding the testimony of [the claimant's] treating physician. Then again, there may not be. In any event, the [Commissioner] is in a better position that this court to perform this

task." *See also Anderson v. Barnhart*, 2004 WL 725373, *10 (N.D. Cal. 2004) (remanding for reconsideration where "the ALJ failed to adequately explain his reasons for rejecting [treating physician's] conclusions as to work restrictions and [Claimant's] testimony with respect to the extent and effect of his pain...."); *Perry v. Astrue*, 2009 WL 435123 (S.D. Cal. 2009) (remanding for further proceedings where the ALJ failed to cite sufficient reasons for rejecting the treating physician's opinion); *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (in the exercise of its discretion, the Ninth Circuit remanded for further proceeding "because there may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding [the treating physician's] opinion.")

## IV.    Conclusion

The ALJ's decision that Johnson was not disabled between June 28, 2006 through April 22, 2008, is supported by substantial evidence and free of legal error. As discussed above, however, this case should be remanded for the ALJ to reevaluate Dr. Danaher's opinion that beginning in June 2008, Johnson would have been limited to part time sedentary work. Accordingly,

IT IS RECOMMENDED that Johnson's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied to the

extent discussed above.  The Commissioner's decision should be reversed to the extent he found Johnson not disabled after April 2008, and this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 11th day of May, 2012

 /s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge